Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARÍA TRINIDAD MENÉNDEZ ANTUNEZ<br><br>Apelada<br><br>v.<br><br>YAMILLE CASTRO MONTES DE OCA<br><br>Apelante | KLAN202400413 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sobre: Cobro de dinero / Regla 60<br><br>Caso Núm.: GB2023CV00974 (701) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de agosto de 2024.

Comparece ante nos, la Sra. Yamille Castro Montes De Oca (en adelante, "señora Montes o apelante–demandada"). Mediante el presente recurso de apelación solicita que revoquemos la *Sentencia* emitida el 25 de marzo de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"). Allí, se declaró *Con Lugar* la acción en cobro de dinero instada por la Sra. María Trinidad Menéndez Atunez (en adelante, "señora Trinidad o apelada–demandante").

Evaluada la totalidad del expediente, **confirmamos** la *Sentencia* apelada. Veamos.

**-I-**

El **24 de octubre de 2023**, la señora Trinidad instó una acción en cobro de dinero bajo la Regla 60 de Procedimiento Civil

---

[1] Notificada el 26 de marzo de 2024.

contra la señora Montes.[2] Entre las sumas reclamadas, solicitó $4,500.00 en concepto de comisión como corredora de bienes raíces.

Luego de varios trámites procesales, el **18 de enero de 2024** la señora Montes sometió una *Moción Solicitando Desestimación Por Falta de Parte Indispensable.*[3] En resumen, alegó que el contrato fue firmado por ella, quien estaba casada bajo el régimen de Sociedad Legal de Gananciales (SLG), por lo cual se debió incluir a su cónyuge y a la SLG en el pleito.

El **23 de enero de 2024**, la señora Trinidad sometió una *Oposición A Moción Solicitando Desestimación De Demanda Por Falta de Parte Indispensable.*[4] En suma, adujo que conforme al estado de derecho vigente los derechos o intereses de la SLG o el cónyuge no se afectarían por la sentencia dictada.

Atendida la solicitud, el TPI emitió una *Resolución* el **25 de enero de 2024**, en la cual declaró *No Ha Lugar* la solicitud de desestimación y señaló el juicio para el **7 de febrero de 2024**.[5]

Celebrado el juicio en su fondo, el **25 de marzo de 2024** el TPI dictó una *Sentencia,*[6] en la que realizó las siguientes determinaciones de hechos:

1. *La Parte Demandante, Sra. María Trinidad Menéndez, es corredora de bienes raíces con licencia número C-19788.*

2. *La Parte Demandada, Sra. Yamille Castro de Montes de Oca, es propietaria del Apartamento Número 211, localizado en el 3307 de la Avenida Isla Verde, Condominio Surfside Mansions, Apartamento 211, Carolina, PR 00979.*

3. *La Parte Demandada contrató los servicios de corretaje de la Parte Demandante para el arrendamiento de su propiedad ubicada en el Condominio Surfside Mansions.*

4. *La Parte Demandante obtuvo el arrendamiento del inmueble al Sr. Adrian V. Day.*

5. *El 28 de junio de 2021, la Demandada firmó un "Residential Lease Agreement" (El Contrato de Arrendamiento) con el Sr. Adrian V. Day para el apartamento 211 del Condominio Surfside Mansions para el término de un año.*

---

[2] Apéndices III – VII de la *Apelación*, págs. 16 – 33.
[3] Apéndice XV de la *Apelación*, págs. 50 – 53.
[4] Apéndice XVIII de la *Apelación*, págs. 56 – 64.
[5] Apéndice XIX de la *Apelación*, pág. 65.
[6] Apéndice II de la *Apelación*, págs. 2 – 15.

6. *Conforme a los términos del Contrato de Arrendamiento, suscrito entre la Demandada y el inquilino, el canon de renta para el periodo inicial de un (1) año sería a razón de $4,500.00 al mes.*

7. *Tanto el Sr. Day como la Sra. Castro firmaron el "Residential Lease Agreement" de forma electrónica, el 28 de junio de 2021. Ese mismo día, la Parte Demandada firmó también de forma electrónica un "Lease Addendum".*

8. *Mediante el "Lease Addendum" firmado por la Demandada el 28 de junio de 2021, ésta formalizó los servicios de corretaje contratados con de la Demandante para el alquiler del apartamento 211 del Condominio Surfside Mansions, que es propiedad de la Demandada.*

9. *Mediante la firma del "Lease Addendum" la Demandada se obligó a pagar a la Demandante – por concepto de comisión ("Brokerage Commission") – una suma equivalente a un mes de renta por el contrato original de arrendamiento cuya vigencia era desde el 1ro de julio de 2021 (7/01/2021) al 30 de junio de 2022 (06/30/2022).*

10. *Mediante la firma del "Lease Addendum" la Demandada se obligó a pagar a la Demandante – por concepto de comisión ("Brokerage Commission") – la mitad de un mes de renta por cada renovación anual del Contrato de Arrendamiento con el inquilino provisto por la Demandante.*

11. *En resumen, conforme al "Lease Addendum" la Demandada se obligó a satisfacer a la Parte Demandante una comisión equivalente a un mes de renta por el contrato inicial de un (1) año y una comisión equivalente a medio mes de renta por cada periodo de 12 meses adicional del Contrato de Arrendamiento.*

12. *Al firmar, con su inquilino, el Contrato de Arrendamiento por el término original que comenzó el 1ro de julio de 2021 y concluyó el 30 de junio de 2022, la Demandada pagó a la Demandante una comisión ascendente a $4,500.00, ello de conformidad a lo acordado en el "Lease Addendum".*

13. *El 20 de junio de 2022, la Parte Demandante le escribió a la Parte Demandada incluyéndole el acuerdo de renovación del Contrato de Arrendamiento para un año adicional para su firma. Esto, en virtud de que en la cláusula 50 del Contrato de Arrendamiento, indica que la corredora prepararía el "draft" de la extensión del arrendamiento.*

14. *El 21 de junio de 2022 (06/21/2022), el inquilino, (Sr. Day) firmó la extensión del contrato de arrendamiento por un término de 12 meses adicionales por la misma renta pactada de $4,500.00 mensuales, término que comenzaría el 1ro de julio de 2022.*

15. *El 22 de julio de 2022, la Parte Demandante le envió a la Parte Demandada el contrato de renovación por un año adicional firmado por el inquilino.*

16. *El 27 de junio de 2022, la Parte Demandante volvió a escribirle a la Parte Demandada indicándole, entre otras cosas, que el Sr. Day ya había firmado el acuerdo de renovación por un año adicional y que estaba esperando de su firma para hacerle llegar copia. A este último correo electrónico la Parte Demandada le contestó que había decidido poner el apartamento de nuevo en el mercado para el mes de julio y que estarían atendiendo ofertas con relación al mismo, indicando que "Cesar" (su esposo) produciría un nuevo contrato revisado por éste para el nuevo prospecto inquilino. Indicaron que le habían*

notificado de ello al Sr. Day, y que por lo tanto de ahí en adelante le informaban que el Contrato de Arrendamiento del apartamento 211 de Surfside Mansions no sería renovado.

17. Contrario a lo indicado en el correo electrónico, la Parte Demandada mantuvo como inquilino al Sr. Day por un término de un año adicional y luego de eso por otro término de otro año adicional, que al momento de celebrarse la vista del presente caso ya habían transcurrido más de 7 meses del mismo.

19. A pesar de que la Parte Demandada renovó el Contrato de Arrendamiento con el Sr. Day, que fue el inquilino producido por la Parte Demandante en cumplimiento con su Contrato de Corretaje, la Parte Demandada calló el que había renovado el referido acuerdo y no le satisfizo la comisión acordada a la Parte Demandante.

20. Una vez la Parte Demandante se enteró que la Parte Demandada había mantenido al Sr. Day como inquilino en el apartamento 211 del Condominio Surfside Mansions por un periodo de un año adicional, ésta le reclamó la comisión correspondiente al periodo del 1ro de julio de 2021 al 20 de junio de 2022 por la cantidad de $2,250.00 según acordado en el "Lease Addendum" mediante carta de abogado del 30 de mayo de 2023.

21. La Parte Demandada ha mantenido como inquilino al Sr. Day y se encuentra en su segundo término de extensión de 12 meses, sin haberle pagado la comisión a la cual se obligó mediante el "Lease Addendum" a la Parte Demandante.

22. La Parte Demandada se negó a satisfacerle a la Parte Demandante la cantidad reclamada por concepto de comisión por la renovación del Apartamento 211 del Condominio Surfside Mansions por el cliente producido por ésta para el periodo de 1ro de julio de 2022 a 1ro julio de 2023.

23. La Parte Demandada se benefició por un término adicional de un año y al momento de la vista del presente caso iban más de 7 meses del segundo término de renovación de un año del contrato con el inquilino procurado por la corredora, sin haberle pagado a ésta el "brokerage commission" acordado por la renovación de cada término adicional de 12 meses, equivalente a una comisión de medio mes por cada periodo de renovación adicional.

24. Luego, de la Parte Demandante verificar que la Parte Demandada continuaba por un año adicional con el inquilino Sr. Day en el apartamento 211 del Condominio Surfside Mansions, ésta mediante carta legal del 21 de septiembre de 2023, le reclamó a la Demandada, tanto la comisión por la renovación del Contrato de Arrendamiento con el Sr. Day correspondiente al periodo del 1ro de julio de 2022 al 30 de junio de 2023, como por la correspondiente al 1ro de julio de 2023 al 30 de junio de 2024, para una suma total de $4,500.00.

25. La Parte Demandada se dedica a Property Management. Tiene una compañía sobre el manejo de propiedades a corto y a largo plazo. Cuenta vasta experiencia en la industria hotelera en varios hoteles en Miami, Florida, así como en el Condado Plaza en Puerto Rico. La Demandada posee un bachillerato en administración de empresas en Miami, y también realizó cursos post graduados de leyes turísticas en la Universidad del Sagrado Corazón.

**26.** *La Parte Demandada reconoció la importancia de leer los contratos antes de suscribirlos, e indicó que ella los lee antes de firmarlos. No obstante, indicó que no había leído el "Lease Addendum".*

**27.** *La Demandada firmó tanto el Contrato de Arrendamiento como el "Lease Addendum" en forma digital.*

**28.** *Mediante demanda presentada el 24 de octubre de 2023, la Demandante le reclamó a la Demandada el cobro de $4,500.00 por concepto de comisión por las renovaciones del contrato de arrendamiento de ésta con el Sr. Day ("Brokerage Comission:").[7]*

Ante las determinaciones de hechos antes dicha, el TPI razonó:

> *[E]n el presente caso **no existe controversia**, en que **el inquilino producido por la Parte Demandante** se ha mantenido ocupando la propiedad ininterrumpidamente **desde el 1ro de julio de 2021 hasta el presente** y que la Demandada ha cobrado todos los cánones de arrendamiento correspondientes.*
>
> *[...]*
>
> *La **controversia** en el presente caso **se suscita al momento de renovarse el Contrato de Arrendamiento**, pues la Parte Demandada retuvo el pago acordado para la comisión por renovación aduciendo que iba a alquilar el apartamento a un tercero, por su cuenta, y que no necesitaba más de sus servicios de corretaje, ello como subterfugio para no pagarle la comisión pactada por concepto de las renovaciones del contrato con el inquilino producido por la Parte Demandante.*
>
> *[...]*
>
> ***De un examen del contrato de corretaje entre la Parte Demandante y la Parte Demandada no surge que era uno exclusivo, sin término fijo.** El acuerdo fue para conseguir un inquilino para el apartamento de la Demandada, quien resultó ser el Sr. Day y se dispuso la comisión a pagar por dicho arrendamiento y sus renovaciones, de esto último ser el caso. El acuerdo no le daba derecho a la corredora a continuar mercadeando el apartamento a terceras personas luego de que culminara el contrato con el Sr. Day.*
>
> ***A pesar de los reclamos** por correo electrónico y por medio de abogado, la Parte Demandada hizo caso omiso a los mismos, **negándose a satisfacer la comisión adeudada a la Parte Demandante** por las dos renovaciones de 12 meses adicionales cada una, en torno al contrato de arrendamiento con el Sr. Day, el inquilino que produjo la corredora en funciones de lo que pactó con la Parte Demandada.*
>
> ***Cónsono con la prueba presentada y el contrato firmado entre las partes, la reclamación por ambas renovaciones asciende a la suma de $4,500.00. Esto es, la mitad de un mes de renta por cada periodo de 12 meses de renovación del contrato, o sea, a razón de $2,500.00 por renovación.**[8]*

Por lo cual, el TPI declaró *Ha Lugar* la demanda instada y resolvió que:

> *[s]e condena a la Parte Demandada Yamille Castro Martínez de Oca a pagar a la Demandante la suma total de $4,500.00*

---

[7] *Íd.*, págs. 4 – 8.
[8] *Íd.*, págs. 12 – 14. *Énfasis nuestro.*

*por concepto de comisión por dos renovaciones del arrendamiento para el apartamento localizado en el 3307 Ave. Isla Verde, Condominio Surfside Mansions, Apartamento 211, en Carolina, Puerto Rico.*

*Se encuentra a la Demandada incursa en Temeridad y se le impone la suma de $1,000.00, en concepto de honorarios de abogado. Se apercibe que la presente Sentencia acumula intereses, a razón del 9.5% anual aplicable determinado por la Oficina del Comisionado de Instituciones Financieras.*[9]

Inconforme, la Sra. Yamille Castro Montes De Oca presentó el **25 de abril de 2024** el recurso de apelación epígrafe, y señaló los siguientes errores:

*PRIMER ERROR – ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR COMO HECHO NUMERO 2: LA PARTE DEMANDADA, SRA YAMILLE CASTRO DE MONTES DE OCA, ES PROPIETARIA DEL APARTAMENTO 211, LOCALIZADO EN EL 3307 DE LA AVENIDA ISLA VERDE, CONDOMINIO SURFSIDE MANSIONS, APARTAMENTO 211, CAROLINA, PR 00979" CUANDO LA PRUEBA DEMOSTRO QUE LA PARTE DEMANDADA ES COPROPIETARIA DE DICHO APARTAMENTO JUNTO A SU ESPOSO.* [SIC].

*SEGUNDO ERROR – ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR COMO HECHO NUMERO QUE EL 21 DE JUNIO DE 2022 (6/21/2022), EL INQUILINO, (SR DAY) FIRMO LA EXTENSIÓN DEL CONTRATO DE ARRENDAMIENTO POR UN TERMINO DE 12 MESES ADICIONALES POR LA MISMA RENTA PACTADA DE $4,500.00 MENSUALES, TERMINO QUE COMENZARÍA EL 1RO DE JULIO DE 2022, SIN EXPRESAR NI MENCIONAR QUE DICHA FIRMA SE REALIZO SIN EL CONOCIMIENTO Y/O CONSENTIMIENTO DE LA PARTE AQUÍ APELANTE SEGÚN SURGE DE LA PRUEBA.* [SIC].

*TERCER ERROR – ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR COMO HECHO NUMERO 19 – "A PESAR DE QUE LA PARTE DEMANDADA RENOVÓ EL CONTRATO DE ARRENDAMIENTO CON EL SR. DAY, QUE FUE EL INQUILINO PRODUCIDO POR LA PARTE DEMANDADA CALLO EL QUE HABIA RENOVADO EL REFERIDO ACUERDO Y NO LE SATISFIZO LA COMISIÓN ACORDADA A LA PARTE DEMANDANTE" CUANDO NO EXISTE NI SE PASO EVIDENCIA QUE PARA ESTABLECER QUE LA DEMANDADA CALLO EL QUE HABIA RENOVADO EL ACUERDO.* [SIC].

*CUARTO ERROR – ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DETERMINAR COMO HECHO QUE LA PARTE DEMANDANTE RECONOCIO QUE EL CONTRATO DE CORRETAJE TIENE RENOVACION AUTOMÁTICAS, NO TIENE FECHA DE VENCIMIENTO Y NO FUE EXPLICADO A LA PARTE DEMANDADA NADA SEGN DISPONE LA LEY 10–1994.* [SIC].

*QUINTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA DEMANDA DONDE SE RECLAMAN COMISION DE UN CONTRATO CON RENOVACIONES AUTOMÁTICAS – PROSCRITO POR LA LEY 10–1994.* [SIC].

*SEXTO ERROR: ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER HONORARIOS POR TEMERIDAD A LA PARTE DEMANDADA POR LA SUMA DE $1,000.00 CUANDO LA*

---

[9] *Íd.*, pág. 15.

*PARTE APELANTE SE DEFENDIO DE UNA CAUSA DE ACCION AMPARADA EN LA LEY 10–1994. [SIC].*

<u>*SEPTIMO ERROR:*</u> *ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA SENTENCIA ACUMULA INTERESES A RAZÓN DE 9.5% ANUAL CUANDO DEBE SER EL INTERES LEGAL ESTABLECIDO POR LA OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS. [SIC].*

Por su parte, el **30 de mayo de 2024** compareció la parte apelada mediante el escrito intitulado *"Alegato de la Parte Apelada".* Con la comparecencia de ambas partes, el recurso quedó perfeccionado y procedemos a resolver el asunto.

**-II-**

**-A-**

El Tribunal Supremo de Puerto Rico ha sido claro en que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[10] La citada norma de deferencia también es aplicable a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> *[N]o hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[11]*

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[12] Por lo tanto, para realizarla adecuadamente nuestro Tribunal Supremo indica expresamente que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[13]

---

[10] *Coop. Seguros Múltiples de PR v. Lugo,* 136 DPR 203, 208 (1994).
[11] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[12] *Íd.*
[13] *Íd.*

**-B-**

Según la normativa antes expuesta, los tribunales apelativos, de ordinario, aceptan *"como correctas las determinaciones de hechos de los tribunales de instancia, al igual que su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en sala"*.[14] A pesar de ello, en ocasiones, la deferencia al arbitrio del juzgador de los hechos no es absoluta.[15] De manera, que:

> *[a]unque alguna prueba sostenga las determinaciones de hechos del tribunal, si de un análisis de la totalidad de la evidencia este Tribunal queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas.*[16]

En cuanto a las determinaciones de hecho y conclusiones de derecho, la Regla 42.2 de Procedimiento Civil apunta que:

> *[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.*[17]

Dicho de otro modo, las determinaciones de hechos basadas en la credibilidad conferida por el juzgador a los testigos que declaren ante sí merecen gran deferencia.[18] Por tanto, nuestra intervención con la evaluación de la prueba testifical procede únicamente cuando un análisis integral de la misma *"nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia"*.[19] De ahí, que nuestro reglamento establece que cuando una parte señale algún error relacionado con la suficiencia de la prueba testifical o la apreciación errónea de la misma, deberá someter una transcripción, exposición estipulada o

---

[14] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).
[15] *Íd.*
[16] *Íd.*, a la pág. 772.
[17] 32 LPRA Ap. V, R. 42.2.
[18] *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009).
[19] *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012).

narrativa de la prueba.[20]

**-C-**

En nuestra jurisdicción se reconoce el principio de la autonomía contractual entre las partes contratantes. Al amparo de la misma, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público.[21]

Referente los contratos de corretaje, el Código Civil de Puerto Rico 2020 contiene varias disposiciones que se aplican a estos contratos.[22] Sin embargo, el Artículo 1418 del Código Civil 2020 excluye la aplicabilidad de dichas disposiciones en aquellos casos de agentes cuya actividad está regulada por una ley especial.[23]

Es por ello que, debemos examinar la Ley Núm. 10 del 26 de abril de 1994 conocida como *Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico*.[24] Dicha ley especial regula el negocio de bienes raíces y la profesión del corredor. Especifica que la función de un corredor de bienes raíces consiste en ser un intermediario en transacciones de compraventa, promesa de venta, opción de compra o venta, permuta, arrendamiento, subasta, administración de propiedades, o en el ofrecimiento, promoción o negociación de los términos de alguna de dichas transacciones.[25]

El artículo 2 inciso (e) de la Ley Núm. 10-1994 define el contrato de corretaje como; *"[a]quél mediante el cual una persona, a cambio de una retribución, se obliga a prestarle servicios a otra como intermediario con un tercero para llevar a cabo una transacción de*

---

[20] Regla 19 (A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19 (A). Véase; además, Reglas 19 (B), 20, 76 (A) y (E).

[21] Artículo 54 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 5421.; *SLG Irizarry v. SLG García*, 155 DPR 713 (2001).

[22] 31 LPRA sec. 10411 – 31 LPRA sec. 10415.

[23] Artículo 1418 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 10413.

[24] Ley Núm. 10 del 26 de abril de 1994 conocida como *Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico*, 20 LPRA sec. 3025 *et seq.*

[25] Artículo 2 (g) de la Ley Núm. 10-1994, 32 LPRA sec. 3025.

*bienes raíces, según definida en esta Ley".*[26] Por su parte, el inciso (t) dispone que una transacción de bienes raíces es *"[c]ualquier contrato, de compraventa, promesa de venta, opción de compra o venta, permuta, arrendamiento, subasta, administración de propiedades, o el ofrecimiento, promoción o negociación de los términos de una venta, opción de compraventa, promesa de compraventa, alquiler, subasta, administración, permuta de bienes inmuebles localizados en o fuera del Estado Libre Asociado de Puerto Rico, donde sirva de intermediario un Corredor, Vendedor o Empresa de Bienes Raíces".*[27]

Los tres (3) tipos de contratos de corretaje principales reconocidos son: los exclusivos, los semiexclusivos y los abiertos.[28] Por otro lado, el Artículo 31 el inciso (9) de la Ley Núm. 10-1994 prohíbe *"[r]ealizar con cualquier parte un contrato de corretaje exclusivo o semi exclusivo, sin explicarle los términos y condiciones del mismo, y su fecha de vencimiento; disponiéndose que no serán permitidas las cláusulas de renovación automáticas en los contratos de corretaje".*[29] Nuestro Alto Foro Judicial resolvió que la intención legislativa de la Ley 10-1994 era que el requisito de explicar e incluir la fecha de vencimiento aplicara a todos los contratos de corretaje, entiéndase a los exclusivos, semi exclusivos y abiertos.[30] Además, la Ley 10-1994 prohíbe incluir cláusulas de renovación automáticas en los contratos de corretaje.[31]

**-E-**

El inciso (d) de la Regla 44.1 de Procedimiento Civil, provee para la concesión de honorarios de abogado.[32] En lo pertinente, dicha disposición estatuye que:

---

[26] 20 LPRA sec. 3025 (e).
[27] 20 LPRA sec. 3025.
[28] *SLG Rodríguez-Rivera v. Bahía Park*, 180 DPR 340, 356-357 (2010).
[29] 20 LPRA sec. 3054.
[30] *SLG Rodríguez-Rivera v. Bahía Park, supra*, a las págs. 357 – 358.
[31] *Íd.*, a la pág. 358.
[32] Regla 44.1 de Procedimiento Civil 2009, 32 LPRA Ap. V, R. 44.1.

> *En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...]*.[33]

Los honorarios por temeridad se imponen como *"[p]enalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias de un pleito"*.[34] Por ello, los honorarios por temeridad buscan *"[d]isuadir la litigación innecesaria y alentar las transacciones, mediante la imposición de sanciones a la parte temeraria, que compensen los perjuicios económicos y las molestias sufridas por la otra parte"*.[35]

El Tribunal Supremo ha dispuesto que *"[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia"*.[36] Al determinar si se ha obrado o no temerariamente, se considera *"la claridad del derecho aplicable y de los hechos demostrablemente ciertos"*.[37] Adviértase que la imposición de honorarios por temeridad descansa en la sana discreción de los tribunales.[38] Por tanto, una vez un tribunal de primera instancia determina que hubo temeridad, la imposición de honorarios es mandatoria.[39]

Así pues, el Máximo Foro Judicial ha resuelto que la imposición de honorarios por temeridad, así como la cuantía, son asuntos discrecionales del Tribunal de Primera Instancia, que deberá guiarse por los siguientes factores: *"(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la*

---

[33] 32 LPRA Ap. V, R. 44.1(d).
[34] *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010).
[35] *Torres Ortiz v. ELA*, 136 DPR 556, 565 (1994).
[36] *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).
[37] R. Hernández Colón, *Práctica Jurídica de Puerto Rico – Derecho Procesal Civil*, 5ª ed., LexisNexis, 2010, pág. 391.
[38] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 211 – 212 (2013); *Torres Montalvo v. García Padilla*, 194 DPR 760, 778 – 779 (2016).
[39] *Íd.*

*cuantía involucrada; (5) y el nivel profesional de los abogados".*[40] Al hacer tal determinación, el foro sentenciador puede declarar expresamente que la parte perdidosa fue temeraria e imponerle la cuantía de honorarios de abogado que entienda procedente o simplemente puede imponérselos en la parte dispositiva del dictamen, lo que implica que entendió que fue temeraria en la litigación.[41]

En fin, la imposición de honorarios de abogado por temeridad es una facultad discrecional del tribunal que no será variada a menos que la misma constituya un abuso de discreción, o cuando la cuantía sea excesiva o exigua.[42]

**-III-**

En síntesis, la parte apelante nos señala la comisión de siete (7) errores por parte del foro apelado, sin embargo, estos se pueden dividir en dos (2) asuntos principales: (1) las determinaciones de hechos y (2) la decisión emitida por el TPI.

Pese a que la señora Montes señala que las determinaciones de hechos no fueron conforme a la prueba desfilada, ésta no sometió la transcripción de la prueba oral ni presentó prueba tendente a demostrar que el juez erró al emitir dichas determinaciones. Al no contar con ello, estamos impedidos de pasar juicio sobre ese particular. Ante tal hecho, debemos brindarles deferencia a las determinaciones de hechos emitidas por el juzgador, ya que fue él quien tuvo ante sí la prueba y estimó el valor probatorio de la misma.

De igual forma, el TPI no incidió al declarar Con Lugar la acción e imponer el pago correspondiente. Como bien expresó el juzgador, la parte apelante utilizó como subterfugio la renta del

---

[40] *COPR v. SPU*, 181 DPR 299, 342-343 (2011), citando a Hernández Colón, *op. cit.*, pág. 391.
[41] *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999), citando a *Montañez Cruz v. Metropolitana Cons. Corp.*, 87 DPR 38 (1962).
[42] *Monteagudo Pérez v. ELA*, 172 DPR 12, 31 (2007).

apartamento a un tercero por su cuenta, para no pagarle a la parte apelada la comisión pactada.

Añadimos, que los honorarios y el interés legal establecido por el TPI son conforme a derecho.

En virtud de lo antes expuesto y cónsono con los principios de derecho antes esbozados, resolvemos que el TPI no cometió los errores señalados por la parte apelante, ni incidió al dictar sentencia a favor de la parte apelada. Por ende, resolvemos confirmar la *Sentencia* apelada.

**-IV-**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones